**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**JEREMY ALLEN, CHARLES THOMAS,**
**ZOEY HOTT, MATTHEW WHITE,**
**MARTEZ GRIFFIN, ELIJAH TAYLOR,**
**and RAMONA ORELLANA,**
**On behalf of themselves and all**
**similarly situated individuals,**

        **Plaintiffs,**

**v.**                                       **Civ. Act. No. _____**

**GLOBAL TEL\*LINK CORPORATION,**
**D/B/A ViaPath TECHNOLOGIES,**

        **Defendant.**

## CLASS ACTION COMPLAINT

1.      Plaintiffs, on their own behalf and on behalf of the putative class, bring this action for damages arising from Defendant's overcharging of Plaintiffs and similarly situated individuals for numerous services, including video visitation and messaging services. Plaintiffs include people who are currently and formerly incarcerated in West Virginia Division of Corrections and Rehabilitation ("WVDCR") facilities[1], as well as their friends and family who were not incarcerated. In May 2022, Defendant Global Tel\*Link Corporation d/b/a ViaPath Technologies ("GTL") contracted with the WVDCR to provide video visitation and other electronic communications services for individuals incarcerated in WVDCR facilities and their non-incarcerated friends and family. Between May 2022 and April 2023, the relevant class period,

---

[1]For purposes of this Complaint, WVDCR facilities shall be construed to include Stevens Correctional Center in McDowell County, West Virginia. While Stevens Correctional Center is owned and operated by the McDowell County Commission, the facility is included in the contract with Defendant that is at issue in this matter.

Defendant GTL charged all Plaintiffs in excess of the contract rate for video visitation services, charged incarcerated Plaintiffs in excess of the contract rate for "access fees," and charged non-incarcerated Plaintiffs in excess of the contract rate per text, photo, and video message. To date, GTL has refused to refund the overcharges to the Plaintiffs and similarly situated individuals. Plaintiffs and the proposed class seek relief under the West Virginia Consumer Credit and Protection Act, the Federal Communications Act and common law.

## PARTIES

2.     Plaintiff Jeremy Allen is a natural person who, at all relevant times, was incarcerated at Huttonsville Correctional Center and Jail ("HCC") in Huttonsville, Randolph County, West Virginia. Mr. Allen now resides in Columbus, Ohio.

3.     Plaintiff Charles Thomas is a natural person who at all relevant times was incarcerated at HCC. Mr. Thomas now resides in Pittsburgh, Pennsylvania.

4.     Plaintiff Zoey Hott[2] is a natural person who at all relevant times was incarcerated within the WVDCR. Ms. Hott was first incarcerated at HCC, then at St. Mary's Correctional Center and Jail ("SMCC"), in St. Mary's, West Virginia, and finally at Denmar Correctional Center and Jail ("DCC"), in Pocohontas County, West Virginia. Ms. Hott now resides in Charleston, West Virginia.

5.     Plaintiff Matthew White is a natural person who currently is, and was at all relevant times, incarcerated within the WVDCR. During relevant times, Mr. White was incarcerated first at DCC and then at HCC.

---

[2] Plaintiff Zoey Hott's legal name is Zackery Hott. Ms. Hott is in the process of obtaining a legal name change.

6.     Plaintiff Martez Griffin is a natural person who currently is, and was at all relevant times, incarcerated at HCC.

7.     Plaintiff Elijah Taylor is, and was at all relevant times, the partner of Jeremy Allen. Mr. Taylor resides in Columbus, Ohio. He is not and has not been incarcerated in a West Virginia correctional facility.

8.     Plaintiff Ramona Lynn Orellana is, and was at all relevant times, a friend of Matthew White. Ms. Orellana lives in St. Cloud, Florida. Ms. Orellana is not and has not been incarcerated in a West Virginia correctional facility.

9.     (a)     Defendant GTL is an "all-in-one Corrections Technology vendor" that provides a variety of services to inmates and their friends and family via access contracts with WVDCR at their jails, prisons, and juvenile facilities across West Virginia.

(b)     GTL maintains contracts with at least 30 state departments of corrections, 640 county correctional facilities, and the Federal Bureau of Prisons. In 2022, it provided over 211 million minutes of video calling services. Defendant currently holds the contract for Inmate Banking, Telephone & Electronic Devices for all WVDCR prisons and jails, including HCC.

(c)     Defendant is a Delaware corporation with its corporate headquarters located at 3120 Fairview Park Drive, Suite 3000, Falls Church, Virginia 22042.

(d)     In addition to doing business as ViaPath Technologies, Defendant also does or has done business as Global TelCoin, Global Tel*Link, and GTL.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 207 for Plaintiffs' claims under the Federal Communications Act. The Court has supplemental jurisdiction over the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

11. The Court also has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual proposed class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Plaintiffs and many, if not most, proposed class members are citizens of states different from Defendant.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)-(2) as Defendant resides and "a substantial part of the events or omissions giving rise to the claim occurred" in this Division of this Court. *Id.*

## STATEMENT OF FACTS

### GTL's Tablet Communications System

13. Defendant GTL enters into contracts with correctional agencies to provide communication services linking incarcerated individuals with their non-incarcerated friends and family.

14. As a general practice, through contracts with the correctional agencies, GTL provides electronic tablets to incarcerated individuals, known as Inspire® Wireless Tablets.

15. GTL's tablets in WVDCR facilities allow inmates to access either "paid" or "free" profiles.

16. An inmate's free profile allows them to see certain facility information, access the law library and some educational programming, and initiate telephone and video calls.

17. The paid profile allows an inmate to pay per minute to listen to music, read and send text messages, watch movies, and look at photos.

18. To engage in video calls and other messaging, an inmate must either have funds in their inmate account or be the beneficiary of a "friends and family account," set up and funded by

a non-incarcerated person who designates that inmate as a beneficiary for purposes of communications with them.

19.     In order to connect with an incarcerated person, a non-incarcerated person must sign up for GTL's proprietary "Getting Out" smartphone application.

20.     The "Getting Out" application allows a non-incarcerated person to deposit funds directly into the incarcerated person's inmate account or to establish a "friends and family account," as described above.

21.     For a friends and family account, the non-incarcerated individual deposits funds into their own personal account created through the Getting Out application; GTL withdraws charged directly from the account for the communications engaged in with the incarcerated person.

22.     Similarly, when communications are initiated through an inmate account, GTL withdraws charges for the service directly from the inmate account.

**GTL Enters Into A Pilot Contract with WVDCR Facilities to Provide Inspire® Wireless Tablets.**

23.     On March 23, 2018, GTL launched a pilot program with WVDCR to introduce Inspire® Wireless Tablets with video-calling capabilities at SMCC. GTL charged $0.25 per minute for video calls made in this program.

24.     In the SMCC pilot program, GTL charged $0.25 per minute for video calls, charged incarcerated individuals $0.03 per minute or $0.05 per minute for content access[3], and charged non-incarcerated individuals $0.25 to send a written text message, $0.50 to send a photo attachment, and $1.00 to send a video attachment.

---

[3] During the trial period, GTL charged incarcerated individuals $0.03 per minute to access basic content, and $0.05 per minute for "premium" content.

25.     On or around February 27, 2019, GTL and WVDCR agreed to expand the pilot Inspire® Wireless Tablet program to ten additional facilities in the state, including HCC and DCC.

**GTL Enters into Contract to Provide Access to all WVDCR Facilities in May 2022.**

26.     On or around July 19, 2021, the West Virginia Department of Homeland Security, Division of Administrative Services ("WVDAS")—on behalf of WVDCR—sought proposals for Inmate Electronic Devices and Services. WVDCR included instructions requiring the applicant to propose "Tablet Rates at Prisons," "Tablet Rates at Jails," "paid usage rate," a per-minute video visitation rate, and a rate for text, photo and video messages. These instructions required prospective vendors to provide an actual rate and not a range.

27.     The Request For Proposals issued by WVDCR sought, among other things, proposals to "provide inmate electronic devices to all [WVDCR] facilities . . . at reasonable and market competitive rates to the inmate, families, and friends."

28.     On May 2, 2022**,** the WVDAS—on behalf of WVDCR—agreed to GTL's proposal to provide equipment, services and "affordable rates for your inmates and their friends and family." This agreement set rates for video calls; inmate content access; text, photo, and video messages; and other services at all WVDCR correctional facilities and superseded the pilot program. WVDCR memorialized these rates in the Agency Master Agreement for Inmate Banking, Telephone & Electronic Devices DCR 2200000046 ("Master Agreement"), set to run from May 15, 2022, to May 14, 2027.

29.     The Master Agreement states that "the pricing set forth herein is firm for the life of the Contract, unless specified elsewhere within this Contract by the State." It also stated, "Vendor is not permitted to charge additional fees or assess additional charges that were not either expressly

provided for in the solicitation published by the State of West Virginia or included in the unit price or lump sum bid amount that Vendor is required by the solicitation to provide."

30.     GTL allows both inmates as well as non-incarcerated individuals to create accounts to pay for video visitation services, written messages, photo messages and video messages via an application managed by GTL.

31.     The Master Agreement sets the price for non-incarcerated friends and family to send written messages, photo messages and video messages at $0.15 per message.

32.     Both incarcerated and nonincarcerated individuals can pay for video visitation services depending upon who initiates the video call. The Master Agreement sets the price of video visitation services at $0.20 per minute.

33.     The Master Agreement sets the price of premium content access at $0.04 per minute for people incarcerated in a prison and $0.05 per minute for people incarcerated in jail and made access to basic content free.

34.     Incarcerated people must pay the premium content access fee to read and send messages to their friends and family outside the facilities. They are not required to pay any content access fee to make or receive video visitation calls.

**GTL Overcharges for Services at Certain WVDCR Facilities After Implementation of the 2022 Master Agreement.**

35.     While the Master Agreement became the operative governing contract setting rates on May 15, 2022, Defendant GTL did not implement the new price structure at all WVDCR facilities.

36.     Upon information and belief, GTL continued to charge the Pilot Program rates to inmates at many of the facilities, including but not limited to HCC, Stevens Correctional Center, and DCC.

37.     Likewise, non-incarcerated individuals sending messages or making video visitation calls to inmates held in those same facilities using "friends and family accounts" through the Getting Out application were also charged Pilot Program rates by GTL.

38.     Specifically, GTL continued charging the Pilot Program rates for Inspire® Wireless Tablet services, including $0.05 per minute for premium content access, $0.03 per minute for basic content access, $0.25 per minute for video calls, $0.25 per written message, $0.50 per photo attachment, and $1.00 per video attachment, for approximately one year after the new contract had gone into effect for individuals incarcerated in at least some of the facilities that had hosted pilot programs.

39.     Accordingly, GTL paid itself funds owned by Plaintiffs from their inmate accounts and/or friends and family accounts for communications and other services at a rate in excess of the rate that it was authorized to charge.

**Plaintiff Jeremy Allen**

40.     Prior to February 2023, Jeremy Allen was incarcerated at Salem Correction Center and Jail ("SCC") in Salem, West Virginia.

41.     While at SCC, Mr. Allen used GTL Inspire® Wireless Tablets to speak with friends and family.

42.     At SCC, GTL charged Mr. Allen and his friends and family $0.20 a minute for video visitation and charged his friends and family members $0.15 per message to send text messages.

43.     On or around February 17, 2023, Mr. Allen was transferred from SCC to HCC.

44.     At HCC, the facility provided Mr. Allen a GTL Inspire® Wireless Tablet.

45.     Shortly after his arrival, Mr. Allen made a video visitation call to his partner, Plaintiff Elijah Taylor.

46.     After completing this video visitation call, Mr. Allen discovered that GTL had charged him $0.25 per minute—$0.05 per minute more than he had been charged at SCC.

47.     Mr. Allen consulted other HCC inmates about the charges for video calls and learned that they too were being charged $0.25 per minute for video visitation services.

48.     Mr. Allen obtained a copy of WVDCR Policy Directive 504.00, issued in February 2023, which stated that video visitation was available on the Inspire® Wireless Tablets at "no cost to use . . . however, once connected, $0.20 per minute," and later in the same document, "[t]he cost for video calls is $0.20 per minute." Additionally, it stated that using the standard paid profile to access premium content like movies and music in prisons like HCC was $0.04 per minute, while basic content was free.

49.     In addition to making video visitation calls, Mr. Allen also accessed paid content on his Inspire® Wireless tablet, for which he was charged $0.05 per minute, and continued to pay $0.03 per minute for content access that should have been free.

**Mr. Allen Exhausts Administrative Remedies**

50.     Following WVDCR's grievance procedure, Mr. Allen filed a grievance asking to be "reimbursed by Gettingout/GTL for the use of video visitation services that reflect the proper rate."

51.     He received a response from a Unit Manager at HCC denying the grievance that stated ".05c standard paid profile: .20c & video vst call = .25c Grievance Denied." [sic.]

52. Mr. Allen appealed this grievance to the superintendent of HCC on March 7, 2023, and then to the Commissioner of WVDCR on March 8, 2023, where the lower decisions denying the grievance were affirmed. Neither appeal response included written explanation.

53. Throughout this period, Mr. Allen continued to place video calls to friends and family and continued to be charged $0.25 per minute.

54. Upon information and belief, Mr. Allen was charged more than $0.04 per minute to access paid content on his GTL Inspire® Wireless tablet during this period, and $0.03 per minute to access content that should have been free.

55. On information and belief, in or around April 2023, Defendant stopped illegally overcharging Mr. Allen and other inmates at HCC.

56. Mr. Allen has never been reimbursed by GTL for the overcharges.

### Plaintiff Charles Thomas

57. Charles Thomas was incarcerated at HCC from November 2019 to April 2024.

58. Mr. Thomas used an Inspire® Wireless Tablet for video visitation services and paid for access to content to receive text messages and picture messages from non-incarcerated family and friends, among other things, between May 15, 2022, and April 2023.

59. GTL charged Mr. Thomas $0.25 per minute for video visitation services between May 15, 2022, and April 2023.

60. Upon information and belief, GTL charged Mr. Thomas $0.05 per minute for paid content access between May 15, 2022 and April 2023, and $0.03 per minute for content access that should have been free.

### Mr. Thomas Exhausts Administrative Remedies

61.     In 2023, Mr. Thomas filed a grievance in accordance with WVDCR policy. In this grievance, he noted that he was being charged more than $0.20 per minute for video calls and requested that he and his family and friends be reimbursed.

62.     Mr. Thomas's unit manager responded to this grievance: "HCC does not control pricing of GTL issues. You will have to contact GTL." The HCC Superintendent and WVDCR Commissioner affirmed this response.

63.     Mr. Thomas submitted a complaint via the GTL technical support system on his tablet requesting money back from being overcharged.

64.     Mr. Thomas never received a response to that request and has never been reimbursed for the overcharges.

### Plaintiff Zoey Hott

65.     Zoey Hott was incarcerated at HCC from approximately June 2022 until August 2022, when she was transferred to SMCC. In or around December 2022, Ms. Hott was transferred from SMCC to DCC.

66.     Ms. Hott was released from WVDCR custody on August 1, 2023.

67.     While incarcerated at HCC, SMCC, and DCC, Ms. Hott used an Inspire® Wireless Tablet for video visitation services and paid for access to content on her tablet, including listening to music and playing games.

68.     GTL charged Ms. Hott and her friends and family more than $0.20 per minute for video calls and charged Ms. Hott $0.05 per minute for paid content access between May 2022 and around April 2023, and $0.03 per minute for content access that should have been free.

69.     GTL has not reimbursed Ms. Hott for illegally overcharging her for video visitation and paid content access.

**Plaintiff Matthew White**

70.     Matthew White was incarcerated at SMCC when GTL launched its pilot program in late 2018. GTL charged him $0.25 per minute for video visitation calls at SMCC.

71.     Mr. White was transferred to Stevens Correctional Center in McDowell County around December 2018 and remained there until around March 2020. He was then transferred to DCC, where he remained until November 2022.

72.     GTL charged Mr. White and his friends and family more than $0.20 per minute for video calls after May 2022 while Mr. White was incarcerated at DCC.

73.     GTL charged Mr. White $0.05 per minute for paid content access after May 2022 while he was incarcerated at DCC, and $0.03 per minute for content access that should have been free.

74.     Mr. White was transferred to HCC in November 2022. At HCC, Mr. White was charged more than $0.20 per minute for video calls until around April 2023.

75.     Likewise, upon transfer to HCC in November 2022, GTL charged Mr. White $0.05 per minute for paid content access until around April 2023. Mr. White likewise paid $0.03 per minute for content access that should have been free.

**Matthew White Exhausts Administrative Remedies**

76.     In May 2024, Mr. White filed grievances in accordance with WVDCR policy. In his grievances, he noted that he had been overcharged by GTL for both messaging services and video visitation services and requested that he be reimbursed.

77.     Mr. White's unit manager responded to the grievance, stating "[y]ou will have to contact GTL it isn't an HCC issue." The HCC Superintendent and WVDCR Commissioner accepted Mr. White's appeals of his grievances and affirmed the responses.

78.     Mr. White submitted multiple complaints via the GTL technical support system on his tablet requesting money back from being overcharged.

79.     Mr. White never received a response to those requests and has never been reimbursed for the overcharges.

### Plaintiff Martez Griffin

80.     Martez Griffin has been incarcerated at HCC since 2019.

81.     GTL charged Mr. Griffin and his friends and family more than $0.20 per minute for video calls between May 2022 to around April 2023.

82.     GTL charged Mr. Griffin $0.05 per minute for paid content access between May 2022 to around April 2023, when GTL reduced the paid content access charge to $0.04 per minute. He likewise paid $0.03 per minute between May 2022 to around April 2023, for content access that should have been free.

### Martez Griffin Exhausts Administrative Remedies

83.     In March 2024, Mr. Griffin filed a grievance in accordance with WVDCR policy. In this grievance, he explained that he had been overcharged by GTL for video visitation services and content access fees and requested that he be reimbursed.

84.     Mr. Griffin's unit manager responded to the grievance, stating "That issue is between you and GTL not HCC. Please take it up with GTL." The HCC Superintendent and WVDCR Commissioner accepted Mr. Griffin's appeals of this grievance and affirmed the response.

85.     GTL has not reimbursed Mr. Griffin for illegally overcharging him.

### Plaintiff Elijah Taylor

86.     Elijah Taylor is the partner of Plaintiff Jeremy Allen. Mr. Taylor maintained contact with Jeremy Allen throughout Mr. Allen's incarceration, including through using the Inspire® Wireless Tablet platform.

87.     GTL charged Mr. Taylor more than $0.20 per minute to use the GTL/GTL app to engage in video visitation with Mr. Allen between May 15, 2022, and April 2023.

88.     GTL charged Mr. Taylor more than $0.15 to send picture, text, and video messages to Jeremy Allen between May 15, 2022 and April 2023.

89.     GTL has never reimbursed Elijah Taylor for the illegal overcharges.

### Plaintiff Ramona Lynn Orellana

90.     Ramona Lynn Orellana and Matthew White are long-time friends. Ramona Lynn Orellana has been in contact with Matthew White via GTL tablets since Matthew was incarcerated at SMCC.

91.     GTL charged Ms. Orellana more than $0.20 per minute to use the GTL Getting Out app to engage in video visitation with Mr. White between May 15, 2022, and April 2023.

92.     GTL charged Ms. Orellana more than $0.15 to send picture, text, and video messages to Matthew White between May 15, 2022 and April 2023.

93.     GTL has never reimbursed Ramona Lynn Orellana for the illegal overcharges.

### GTL Overcharges at Other WVDCR Facilities.

94.     On information and belief, GTL charged inmates and their non-incarcerated friends and families more than $0.20 per minute for video calls, $0.15 per message for text, photo, and video messages, and $0.04 per minute to access premium content, and $0.00 per minute to access basic content on Inspire® Wireless Tablets at West Virginia correctional facilities between

August 2022 and May 2023, including but not limited to HCC, DCC, SMCC, and Stevens Correctional Center, in Welch, West Virginia.

**GTL/ViaPath is solely responsible for Collecting Claims Relating to Charges for its Video Visitation and other Messaging Services**

95.    In its contract with WVDCR, GTL provided "a full staffing plan of GTL's Executive Team, Administrators, Technicians, and Support Staff."

96.    Upon information and belief, the staff provided by GTL include executive positions that control pricing of tablet services. For example, the Associate Vice President of Field Services "performs daily management of resources to oversees inmate telephone services contractual requirements, inmate tablets, kiosks, service offerings, processes, maintenance and administrative activities, and responsibilities as it relates to Field Services."

97.    Upon information and belief, because GTL controls the tablet services, the inmate accounts, and the accounts set up by non-incarcerated friends and family, GTL exercises exclusive control over the amounts actually charged to individuals for video visitation calls, electronic messages, and content access, notwithstanding the rates established by WVDCR in the Master Agreement.

**Plaintiffs Notify GTL of Its Right to Cure**

98.    Pursuant to West Virginia Code § 46A-5-108, Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana, through their counsel Mountain State Justice, sent GTL a notice of opportunity to cure on March 27, 2024, advising GTL of its right under West Virginia law to cure to the alleged violations.

99.    GTL's agent received that notice on April 1, 2024; as of the date of filing, no response has been received, and no cure offer has been made.

## CLASS ALLEGATIONS

100. **Class Definition.** Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana seek to represent the class of people whom, between May 15, 2022, and April 30, 2023, GTL charged more than (1) $0.20 per minute for video visitation services; (2) $0.15 cents per message for text, photo, and video messages; (3) $0.04 cents per minute to access paid content; and/or (4) charged for access to free content, in connection with an inmate's use of a GTL Inspire® Wireless Tablet platform in WVDCR facilities.

101. This action is brought as a class action and may properly be so maintained pursuant to Federal Rule of Civil Procedure 23 and applicable case law. This action seeks class-wide civil penalties and actual damages pursuant to West Virginia Code § 46A-6-106, as well as punitive damages under West Virginia common law based on Defendant's policy and practice of overcharging in excess of what is permitted by the Master Agreement for video visitation, messaging services, and content access, and refusal to refund such overcharges upon request. Plaintiffs also seek attorney's fees and costs as allowed by each right of action.

102. **Ascertainability.** Members of the proposed Class are identifiable and ascertainable. Upon information and belief, GTL retains records of all (1) video visitation calls made through the Inspire® Wireless Tablet platform, including the amount charged per call; (2) text, photo, and video messages sent by non-incarcerated people through the Inspire® Wireless Tablet platform, including the amount charged per message; and (3) minutes spent accessing paid content on an Inspire® Wireless tablet by incarcerated individuals, and the amount charged per minute.

103. **Impracticability of Joinder (Numerosity of the Class).** The members of the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims

in a class action is a benefit both to the parties and to this Court. The class includes every person incarcerated in WVDCR facilities who used GTL video visitation services and paid more than $0.20 per minute between May 15, 2022, and April 30, 2023, as well as every family member, friend, or person otherwise not incarcerated who paid more than $0.20 per minute for such services in the same period. The class additionally includes every family member, friend, or person otherwise not incarcerated who paid more than $0.15 per text, photo, or video message sent to an individual incarcerated within a WVDCR facility, using the Inspire® Wireless Tablet platform during the same timeframe. Finally, the class further includes every incarcerated individual in a WVDCR prison facility who paid more than $0.04 per minute to access paid content on an Inspire® Wireless tablet and/or paid $0.03 per minute to access free content during that same period.

104. In its proposal, GTL asserted that during the Pilot Period between 2018 and 2022, it had provided over 900 tablets to West Virginia carceral facilities, recorded over 800,000 completed video visits, and recorded approximately 7.5 million video visit minutes at twelve facilities. Following implementation of the Master Agreement, GTL expanded the number of tablets available in all facilities. On information and belief, tablet usage increased after this expansion. Of note, many incarcerated class members engaged in video visitation and messaging with numerous non-incarcerated individuals, indicating that the number of non-incarcerated class members is likely to far exceed the number of incarcerated class members. These usage rates suggest that the number of class members assuredly exceeds forty, and joinder of the class members would be impracticable.

105. **Questions of Fact and Law Common to the Class.** Resolution of the claims requires assessing whether GTL charged rates higher than those set by the Master Agreement

between WVDCR and GTL, GTL's reimbursement procedures, and GTL's compliance with such procedures. The claims of the named Plaintiffs and the putative Class will require the same evidence and proof to establish Defendant's liability, including whether GTL has any legal defenses that apply to the overcharges collected from individuals incarcerated in WVDCR facilities and those non-incarcerated individuals using video visitation and other messaging services to communicate with incarcerated individuals. Once liability is established, damages arising from the claims of the named Plaintiffs and putative class members are calculable by a common method to measure the damages of each class member. Certain class wide damages are determinable from a paper review and calculations or otherwise through a common methodology.

106. **Typicality.** The claims of the named Plaintiffs are typical of those of the proposed classes in the following ways: 1) Plaintiffs are members of the proposed class; 2) Plaintiffs' claims arise from uniform charging and collection policies and course of conduct on the part of GTL; 3) Plaintiffs' claims are based on the same legal and remedial theories as those of the proposed class and involve nearly identical factual circumstances; 4) the injuries suffered by the named Plaintiffs are the same injuries suffered by the proposed class members; and 5) the relief sought herein will benefit the named Plaintiffs and all class members alike.

107. **Adequacy**. Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana will fairly and adequately represent and advance the interests of the class. By filing this action on behalf of their fellow inmates and friends and family of incarcerated people, Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana have displayed a strong interest in vindicating the rights of all who face the same type of harm. By aggressively pursuing their own interests in prevailing on

the claims advanced here, they will be advancing and proving the claims and rights of absent class members at the same time.

108.     There are no antagonistic interests between the named Plaintiffs and the absent members of the Class, and the relief sought by the named Plaintiffs for the Class is the same as they seek for themselves.

109.     Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana are represented by Consumer Litigation Associates, PC, a well-established consumer litigation firm with significant class action experience located in Newport News, Virginia, and Mountain State Justice, Inc., a non-profit, public interest legal services firm with long and substantial expertise in class litigation on behalf of low income and vulnerable West Virginians. Counsel for the putative class is skilled and experienced in class litigation and has the resources to carry such litigation to a final resolution.

110.     **Predominance**. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the class members predominate over any questions affecting individual members of the putative classes.

111.     **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy because: 1) individual claims by the class members would be impracticable because the cost to pursue such claims would far exceed what any individual class member has at stake; 2) no individual litigation has been commenced over the controversies alleged in this Complaint and individual class members are unlikely to have an interest in separately prosecuting and controlling individual actions; 3) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; 4) the proposed class is manageable, and no difficulties are likely to be encountered in the management of this class

action that would preclude its maintenance as a class action; 5) the proposed class members are readily identifiable from Defendants' own records; and 6) prosecution of separate actions by individual members of the proposed class would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed classes that would establish incompatible standards of conduct for GTL.

## CLAIMS FOR RELIEF

### COUNT I
### (Unfair or Deceptive Acts or Practices)

112.    Plaintiffs incorporate by reference as though fully set forth herein the preceding paragraphs of this Complaint.

113.    Defendant's overcharging of and collection from Plaintiffs occurs exclusively through Defendant's wholly owned platform over which it has exclusive control.

114.    GTL has at all relevant times been subject to and governed by the West Virginia Consumer Credit and Protection Act, which prohibits unfair methods of competition and unfair or deceptive acts or practices, West Virginia Code § 46A-6-104, and gives a private cause of action to anyone "who purchases . . . services and thereby suffers an ascertainable loss of money . . . as a result of . . . a method, act or practice prohibited or declared to be unlawful by the provisions of this article." *Id.* at § 46A-6-106.

115.    By charging rates higher than those set in the Master Agreement, GTL misrepresented the price of video visitation services, messages, and content access and falsely represented that it was entitled to collect more than $0.20 a minute, $0.15 per message, $0.04 and $0.00 a minute, respectively.

116.    By charging more per minute/message than permitted in its contract with WVDCR, GTL engaged in the act, false pretense, false promise, misrepresentation, concealment,

suppression, or omission, in connection with the sale or advertisement of video-calling services, messages, and content access between May 15, 2022, and April 30, 2023.

117. Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana, and the proposed class, suffered an ascertainable loss of money as a result of GTL's charging and collection of more than $0.20 per minute for video visitation calls, $0.15 per message, $0.04 per minute for paid content access, and $0.03 per minute for free content access through GTL tablets between May 15, 2022, and April 30, 2023.

118. Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana, and the proposed class, each seek to recover actual damages or $200, whichever is greater, in addition to attorney's fees and the costs of litigation. *See* W. Va. Code § 46A-6-106.

## COUNT II
### (Conversion)

119. The Plaintiffs incorporate the preceding paragraphs by reference.

120. Defendant engaged in the unlawful taking of money from Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana and the Plaintiff class and exercised ownership over that money without Plaintiffs' consent.

121. Defendants had possession of Plaintiffs' money for the limited purpose of applying the funds to valid charges. While Plaintiffs may have given Defendant consent to deduct proper and lawful charges, Defendant exceeded the scope of that consent by taking more than legally due.

122. GTL's contract with WVDCR provides that GTL "is not permitted to charge additional fees or assess additional charges that were not either expressly provided for in the solicitation published by the State of West Virginia or included in the unit price or lump sum bid amount that Vendor is required by the solicitation to provide."

123. GTL charged additional fees or charges not expressly provided for in that solicitation by charging more than the rates set in the Master Agreement for video calls, messaging, and content access.

124. In doing so, GTL engaged in the unlawful taking of funds from Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana and the Plaintiff class.

125. Under West Virginia law, a jury may award punitive damages for conversion to punish the defendant and to deter others from engaging in a like course of conduct, if the jury finds willful or reckless conduct to civil obligations. *Shamblin's Ready Mix v. Eaton Corp.*, No. 86-1114, 1987 U.S. App. LEXIS 19507, at *10 (4th Cir., May 26, 1987).

126. Through their Notice of Opportunity to Cure, sent to GTL on March 27, 2024, Plaintiffs requested reimbursement from GTL for themselves and on behalf of the putative class.

127. On information and belief, and in accord with a common practice and corporate policy, Defendant did not return overcharges to any member of class, including named Plaintiffs.

128. GTL did not return the amount it overcharged Jeremy Allen after he requested it via the WVDCR grievance system in March 2023.

129. GTL did not return the amount it overcharged Charles Thomas after he requested it via the WVDCR grievance system in October 2023, nor did it return his money after he requested it through internal customer-service system on the GTL Inspire Tablet in October 2023.

130. GTL did not return the amount it overcharged Matthew White after he requested it via the WVDCR grievance system in April 2024, nor did it return his money after he requested it through GTL's internal customer-service system on the GTL Inspire Tablet in February and March 2024.

131.     GTL did not return the amount it overcharged Martez Griffin after he requested it via the WVDCR grievance system in April 2024.

132.     GTL knew that it had overcharged Plaintiffs and the plaintiff class for video visitation and other services for approximately eleven months when it reduced the amount being charged for video calls, messages, and content access in or around April 2023.

133.     Plaintiffs ask for recovery of money damages, attorney's fees, as well as punitive damages issuing from GTL's willful, knowing, and reckless refusal to return the amount of the overpayments to Plaintiffs and the Plaintiff class.

## COUNT III
### (Federal Telecommunications Act, 47 U.S.C. § 207)

134.     The Plaintiffs incorporate the preceding paragraphs by reference.

135.     Section 207 of the Federal Telecommunications Act permits lawsuits for damages against common carriers for any "charge, practice, classification, or regulation . . . that is unjust or unreasonable," 47 U.S.C. § 201(b), for "unreasonable discrimination in charges, practices, [or] classifications," *id.* § 202(a), and for subjecting "any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage." *Id.* § 202; *see also, id.* § 206.

136.     Common carriers "are entities that must provide [transmission] service[s] to the public without discrimination and are heavily regulated by the FCC." *Johnson v. Am. Towers*, LLC, 781 F.3d 693, 702 (4th Cir. 2015) (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430, 450 (4th Cir. 2005) (citation omitted)).

137.     Courts have recognized that Defendant GTL is a common carrier subject claims under section 207 of the FCA with regard to interstate *telephone* calls to and from incarcerated individuals. *See, e.g.*, *Githieya v. Global Tel*Link Corp.*, 1:15-CV-986-AT, 2018 U.S. Dist. LEXIS 245566, at *18-19 (N.D. Ga. Sep. 7, 2018).

138.     On January 5, 2023, the Martha Wright-Reed Just and Reasonable Communications Act of 2022 ("Wright-Reed Act") became law. The Wright-Reed Act expanded the FCC's authority to regulate "any audio or video communications service used by inmates for the purpose of communicating with individuals outside the correctional institution where the inmate is held, regardless of technology used." Martha Wright-Reed Act § 2(a)(1); 47 U.S.C. § 153(1)(E).

139.     GTL is an entity that, under contract with WVDCR, must provide transmission services to the public without discrimination, and is heavily regulated by the FCC through the Wright-Reed Act.

140.     GTL unjustly and unreasonably charged Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana a rate for video calls, messages, and content access higher than that permitted by the Master Agreement.

141.     GTL's practice of charging and refusing to reimburse Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana and the class for charges above the rates set by the Master Agreement was unjust and unreasonable.

142.     GTL discriminated against Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana and the class by charging them rates higher than inmates and friends and family of inmates at other WVDCR facilities for the same services.

143.     Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana ask for a recovery of damages and all other penalties and relief available under the FCA. *See* 47 U.S.C. § 206.

## REQUEST FOR RELIEF

**WHEREFORE**, based on the above stated facts, Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana, on behalf of themselves and the putative classes, respectfully request the following relief:

(a)     The Court certify a class as earlier defined and appoint the named Plaintiffs as Class Representatives;

(b)     Actual damages or $200.00, whichever is greater, for each Plaintiff and member of the Plaintiff Class. *See* W. Va. Code § 46A-6-106;

(c)     Punitive damages;

(d)     Reasonable attorney's fees and the cost of this litigation; and

(e)     Prejudgment interest and such other relief as this Court deems equitable and just.

**Respectfully Submitted,**

**Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana**
By Counsel:

_____/s/ Leonard A. Bennett_____
Leonard A. Bennett (VSB No. 37523)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com

Drew D. Sarrett (VSB No. 81658)
CONSUMER LITIGATION ASSOCIATES, P.C.
620 East Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 905-9900
Facsimile: (757) 930-3662
drew@clalegal.com

Lydia C. Milnes (WV Bar #10598)
*Pro Hac Vice Pending*
Mountain State Justice, Inc.
1029 University Ave., Suite 101
Morgantown, WV 26505
Phone: (304) 326-0188
Facsimile: (304) 326-0189
lydia@msjlaw.org

Colten Fleu (WV Bar # 12079)
*Pro Hac Vice Pending*
Bren Pomponio (WV Bar # 7774)
*Pro Hac Vice Pending*
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Phone: (304) 344-3144
Facsimile: (304) 344-3145
bren@msjlaw.org
colton@msjlaw.org