**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| JEREMY ALLEN, CHARLES THOMAS, ZOEY HOTT, MATTHEW WHITE, MARTEZ GRIFFIN, ELIJAH TAYLOR, and RAMONA ORELLANA, , *on behalf of herself and all similarly situated individuals,*<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL TEL*LINK CORPORATION, D/B/A ViaPath TECHNOLOGIES,<br><br>Defendant. | Civil Action No. 1:24-cv-827-LMB-IDD |

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS**
**SETTLEMENT AND FOR SERVICE AWARD AND ATTORNEYS' FEES**

Plaintiffs Jeremy Allen, Charles Thomas, Zoey Hott, Matthew White, Martez Griffin, Elijah Taylor, and Ramona Orellana, on behalf of themselves and the Settlement Class Members, by counsel, submit this Memorandum in Support of their Motion for Final Approval of Class Settlement. Along with final approval of the class settlement, Plaintiffs ask the Court to enter an order approving the agreed upon reasonable service awards to Plaintiffs and attorneys' fees.

## INTRODUCTION

Plaintiffs filed this Class Action against Defendant Global Tel*Link Corporation, d/b/a ViaPath Technologies ("ViaPath" or "Defendant"), alleging as class claims that ViaPath violated the Federal Telecommunications Act, 47 U.S.C. § 207 ("Federal Communications Act") and West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101 *et seq.* ("WVCCPA") by collecting and attempting to collect payment fees that were in excess of the rate authorized under the 2022 Master Agreement with West Virginia Division of Corrections and Rehabilitation

1

("WVDCR") facilities, and 2) committed conversion under West Virginia common law by unlawfully taking money from Plaintiffs and putative class members.

Before an Answer to the complaint was filed, Plaintiffs and ViaPath entered into a Settlement Agreement and Release ("Settlement Agreement"). The Court preliminarily approved the Settlement Agreement on February 21, 2025. (ECF No. 44). The proposed Settlement affords significant relief to the Settlement Class Members that will, if approved: (1) reimburse Settlement Class Members for all improper charges; (2) provide each Settlement Class Member further compensation in an equal amount. In other words, each class member will receive double the amount for which they were overcharged. Upon the Court's preliminary approval of the class Settlement Agreement, it directed notice to the Class Members. (ECF No. 48.)

The Settlement Administrator has now issued notice to the Class and the relevant government authorities under the Class Action Fairness Act ("CAFA") and has received no objections to and three opt-outs from the Settlement to date.[1]  For these reasons and the others explained below, the proposed settlement satisfies Rule 23(e)(2)'s requirements that a class settlement be fair, reasonable, and adequate, and Plaintiffs respectfully request that the Court approve the Settlement.  Plaintiffs and Class Counsel further request that the Court approve service awards of $3,500.00 to each Plaintiff and attorneys' fees of $90,000, both of which ViaPath has agreed to pay separately from the amounts paid to the Settlement Class Members.  The requested fees and costs are also less than those actually incurred by Class Counsel to achieve a meaningful result for the Class Members.  And, since the requested service awards and attorneys' fees and

---

[1] The Opt-Out and Objections Deadline is June 30, 2025.  A declaration with final numbers on opt-outs and objections will be filed not later than fourteen days before the Final Approval Hearing, per the Court's Preliminary Approval Order.  (ECF No. 44.)

costs  will be paid separate and apart from and not reduce any benefit to Class Members, plaintiffs and Class Counsel respectfully request that the Court award these amounts.

**THE CLASS ACTION SETTLEMENT AND NOTICE PROGRAM**

**A.     The Settlement Class**

Under the Settlement Agreement, the parties agreed to resolve the claims of a class ("Settlement Class") defined as:

> All people whom, between May 15, 2022, and April 30, 2023, GTL charged more than (1) $0.20 per minute for video visitation services; (2) $0.15 cents per message for text, photo, and video messages; (3) $0.04 cents per minute to access paid content; and/or (4) charged for access to free content, in connection with an inmate's use of a GTL Inspire® Wireless Tablet platform in WVDCR facilities.

(Settlement Agreement § 1.30.) Based on ViaPath's records, there are 11,879 Settlement Class Members. (ECF No. 49, ALCS Decl. ¶ 4.)

**B.     The Settlement Provides Significant and Meaningful Relief to Class Members.**

The proposed class action settlement provides not only automatic payments to Class Members in an amount equal to all overcharges but also includes a second payment in an equal amount as damages. Plaintiffs achieved the proposed settlement before an Answer to the Complaint was filed and after preliminary negotiations and mediation presided over by Magistrate Judge Fitzpatrick. Plaintiffs negotiated a settlement that will provide substantial financial benefits to each Settlement Class Member.

As set forth in the Settlement Agreement, ViaPath will provide automatic payments to each Settlement Class Member in the form of credits to their ViaPath accounts or cash payments, without the need to file a claim form. Additionally, ViaPath will make a second payment of the same amount as damages to each Settlement Class Member. In other words, each class member will receive twice the amount of the improper charges. Importantly, ViaPath has agreed to pay for

3

the notice and administration costs, Plaintiff's Service Award, and any attorney's fees and costs awarded by the Court separately, so those amounts will not reduce the amounts paid to Class Members. (Settlement Agreement §§ 3.2.4, 4.3.)

The relief provided by the proposed settlement is significant. Settlement Class Members will receive compensation in an amount equal to double the actual overcharges each Settlement Class Member endured. Reimbursement of the wrongful overcharges is the primary relief Plaintiffs were seeking in bringing this case, and the Settlement will deliver that relief to the Settlement Class Members far sooner than with further costly litigation.

**C.    The Settlement Administrator Provided Direct Notice to Settlement Class Members.**

In its Preliminary Approval Order, the Court approved the proposed notice plan and ordered that the Class Notice be sent to Settlement Class Members by settlement administrator. (ECF No. 44 ¶¶ 8-9.) Consistent with the Court's Preliminary Approval Order, American Legal Claim Services, LLC (ALCS) used the class list provided by ViaPath. (ECF No. 49, ALCS Decl. ¶ 4.) Through these records, ALCS identified and compiled a final class list of 11,879 members. (*Id.*)

"On April 18, 2025, ALCS caused the Notice of Class Action ('Notice') to be emailed, substantially in the form approved by the Court to 5653 FNF (Friends and Family) class members." (*Id.* ¶ 5.) "On May 2, 2025, ALCS mailed notice to 991 FNF class members that did not have a valid email address." (*Id.*) ViaPath sent the class notice to the 5235 incarcerated class members the week of April 14, 2025. (*Id.* ¶¶ 4, 5.) ALCS "utilized several means of ensuring the most accurate mailing addressing for class members," including identifying addresses through the "National Change of Address through USPS, skip-tracing, and manual updates from class members." (*Id.* ¶ 4.)

For the notices returned by USPS, ALCS either (a) remailed the Notice to the updated address provided by USPS with its return notice, or (b) if no updated address was provided, "conducted address searches using a nationally recognized location service to attempt to locate new addresses for these class members." (*Id*. ¶ 6.) Of the 991 initial notices mailed, 189 were returned by USPS as of the filing of this Motion. (*Id*.) Of the returned notices, 42 were remailed to updated addresses, and 6 of those remailed notices were returned. (*Id*.) In sum, 11,732 notices (*i.e.*, 98.76%) are presumed delivered and 147 notices remain undelivered, (*id*. ¶ 7).

### D.    There Have Been No Objections and Minimal Opt-Outs.

None of the 11,879 Class Members have objected to the Settlement, and only three Class Members have opted out as of the filing of this Motion, with the deadline to object or opt-out on June 30, 2025. (*Id*. ¶¶ 8-9.) Similarly, Defendant also worked with ALCS to timely serve the required CAFA notices to 57 federal and state officials, including the attorneys general of each of the 50 states, the District of Columbia, and the United States Territories. (*Id*. ¶ 3.) No attorney general's office or government agency has filed an objection to the proposed settlement.

### E.    The Settlement Provides a Limited Release to Defendant.

In return for this consideration, Settlement Class Members will provide a narrow release that is tailored to the specific class claim in this case:

> Upon the Effective Date, each Settlement Class Member, on behalf of themselves and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors, assigns, and all those acting or purporting to act on their behalf, acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally, and forever settled, released, and discharged all the Released Parties of and from all claims involving common law conversion, violation of the Federal Communications Act, and violation of WVCCPA ("Released Claims"), arising from Overage Charges.

(Settlement Agreement § 4.2.)

5

## ARGUMENT

**A.      The Notice Program Satisfied the Requirements of Rule 23(c)(2)(B).**

When a class is "certified for purposes of settlement under Rule 23(b)(3)," a district court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This notice may be provided by "United States mail, electronic means, or other appropriate means." *Id*. The Rule also requires that the notice inform potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id*. In assessing the sufficiency of the notice, the Court must consider both the method of delivery and the notice's content. *See* Federal Judicial Center, *Manual for Complex Litigation* § 21.312 (4th ed. 2004).

In this case, Class Members were identified from the user records of ViaPath, which contained the class members' names, addresses and email addresses. (ECF No. 49, ALCS Decl. ¶ 4.) Using this information, ALCS identified and compiled a final class list that contained 11,879 class members. (*Id*.) After ALCS identified Class Members, reasonable measures were taken to provide individual notice to those Members through the Notice Program previously approved by the Court. As detailed above, this Notice Program resulted in a 98.76% delivery success rate to the Class utilizing both email, mail, and notification to incarcerated individuals by ViaPath devices. (*Id.* ¶¶ 5-7).

As Judge Payne has previously explained, "[w]hat amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'" *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va.

2003) (citations omitted).  Here, 11,732 notices are presumed delivered and 147 notices remain undelivered. (ECF No. 49, ALCS Dec. ¶¶ 5-7.)  Courts—including this one and others within the Fourth Circuit—have approved mailed-notice programs that reached a much smaller percentage of class members than the success rate here.  *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp.*, No. 3:05cv143 (E.D. Va. Aug. 29, 2006) (granting final approval where class notice had approximately 85% delivery success).

In sum, the parties here have complied fully with the Court's Preliminary Approval Order and have taken reasonable steps to ensure that the Class Members were notified—in the best and most direct manner possible—of the Settlement's terms and significant benefits, as well as their right to exclude themselves or object.

### B.    The Settlement Satisfies the Requirements of Rule 23(e)(2).

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit."  *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)).  When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class."  *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022).  "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate.'"  *Id*. (quoting Fed. R. Civ. P. 23(e)(2)).  "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

7

    (C)      the relief provided for the class is adequate, taking into account:

        (i)        the costs, risks, and delay of trial and appeal;

        (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorneys' fees, including timing of payments; and

        (iv)    any agreement required to be identified under Rule 23(e)(3);

    (D)      the proposal treats class members equitably relative to each other.

*Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (Payne, J.) (quoting Fed. R. Civ. P. 23(e)(2)).  In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).[2]

                ***1.      Plaintiff and Class Counsel have adequately represented the Class.***

    Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)).  Rule 23's adequacy requirements are met if:

---

[2] On December 1, 2018, "Rule 23(e)(2) was amended to specify factors for assessing the 'fairness, reasonableness, and adequacy' of a class-action settlement." *Lumber Liquidators*, 952 F.3d at 484, n.8.  Prior to this, the Fourth Circuit developed and applied its "own multifactor standards" for fairness and adequacy.  *See, e.g.*, *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).  Because the Fourth Circuit's prior considerations "almost completely overlap with the new Rule 23(e)(2) factors," *Lumber Liquidators*, 952 F.3d at 484, n.8, decisions prior to the amendment to Rule 23(e)(2) continue to be relevant.

"(1) the named plaintiff[s] [have] interests common with, and not antagonistic to, the Class's interests; and (2) the plaintiff[s'] attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs v. Stinson*, No. 3:18-cv-676, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (Lauck, J.) (quoting *Milbourne v. JRK Residential Am., LLC*, No. 3:12-cv-861, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied here. As to Plaintiffs, their interests and those of members of the proposed class are fully aligned, as they are all victims of the same alleged unfair billing practices. *See, e.g.*, *Stinson*, 2021 WL 4812451, at *16 (finding that the plaintiffs were adequate in a comparable case because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact"); *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 59 (E.D. Va. 2021) (finding that the plaintiffs were adequate in a comparable case because the "Plaintiffs' interests are in line with those of the broader classes"); *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 345 (D.N.J. 2019) ("There is nothing in the record to suggest that any proposed class representative has a claim or interest antagonistic to the remainder of the class: MacDonald and Spearman took out loans from Western Sky allegedly at usurious interest rates."); *Brice v. Haynes Invs., LLC.*, 2021 WL 1916466, at *6 (N.D. Cal. Apr. 23, 2021) (same). Indeed, in its Preliminary Approval Order, the Court already found that "[t]he Named Plaintiff will fairly and adequately protect the interests of the Settlement Class…." (ECF No. 44 ¶ 3.d.) Nothing has changed since the Court's Preliminary Approval Order to warrant revisiting these conclusions.

As to Class Counsel, courts in which Mountain State Justice regularly practice have repeatedly found them to be qualified, experienced, and adequate under Rule 23 in consumer litigation cases. This Court and others, likewise, regularly find local co-counsel, Kelly Guzzo and

Consumer Litigation Associates to be qualified, experienced, and adequate under Rule 23. *See, e.g.*, *Hill-Green v. Experian Info Sols.*, No. 3:19-cv-708 (E.D. Va. Mar. 1, 2023) ("[O]ne of the things I find is the adequacy of counsel. I think I have said dozens of times that this is, adequacy just doesn't begin to cover it. That I do believe that . . . we have the premiere litigators with respect to these credit reporting issues in the nation."); *Galloway v. Williams*, No. 3:19-cv-470, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020) (finding that "Class Counsel and their firms have extensive backgrounds in complex and class action litigation and consumer protection litigation"); *Heath v. Trans Union, LLC*, No. 3:18-cv-720, ECF No. 60 at 9:7–9 (E.D. Va. Aug. 6, 2019) ("[Kelly Guzzo's] reputation in this district, and I am sure in others, are sterling."); *Clark v. Trans Union, LLC*, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) ("This Court echoes the sentiments previously stated about Clark's counsel because they pertain here with equal vigor."); *Burke v. Seterus, Inc.*, No. 3:16-cv-785, ECF No. 41 at 9:19–22 (E.D. Va. 2017) ("Experience of counsel on both sides in this case is extraordinary. Ms. Kelly and Ms. Nash and their colleagues are here in this court all the time with these kinds of cases and do a good job on them."); *Dreher v. Experian Info. Sols.*, Inc., 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."). Class Counsel's adequacy is also confirmed by the fact that the Settlement, if approved, provides for the reimbursement of every penny of the charges that Plaintiffs challenged as unlawful in the first place.

## 2. *Negotiations were arm's length.*

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless

there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at *21 (E.D. Mich. Mar. 31, 2006)).  Here, there is no evidence suggesting the presence of collusion or fraud between the parties.

To help confirm that the negotiations were arm's length, courts have looked at several other factors, including the presence of a third-party mediator, the posture of the case at the time of settlement, and the relief afforded by the Settlement.  "Considering the posture of the case at the time of settlement allows the Court to determine whether the case has progressed far enough to dispel any wariness of 'possible collusion among the settling parties.'"  *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 571 (E.D. Va. 2016).  Here, settlement occurred at an early stage of litigation, but that should not give rise to concern. Settlement occurred under the guidance of United States Magistrate Judge William E. Fitzpatrick.  And the relief provided under the Settlement, which is not conditioned on the award of attorney's fees to Class Counsel and requires ViaPath to reimburse and make payments to every individual affected by its wrongful billing practices, confirms that the Settlement was not the result of collusion between the parties.

### 3.    *The relief provided to the Settlement Class is adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy.  *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159).  An analysis of each subfactor shows that this settlement is fair, reasonable, and adequate here.

11

First, the costs, risks, and delay of trial and appeal supports approval of the Settlement. While Class Counsel believes in the strength of this case, they also acknowledge that there are substantial risks associated with continued litigation.  Most notably, from the start of litigation, ViaPath has been skeptical of Plaintiffs' claims derived from a contractual agreement between it and the West Virginia Bureau of Corrections. Were ViaPath to dig in on its defenses, this case would involve substantial briefing at the class certification and summary judgment stages, as well as at trial and on appeal.  The settlement avoids this significant cost, risk, and time by providing significant settlement benefits to the Class Members now.

Second, the effectiveness of the proposed method of distributing relief to the class, including the method of processing class-member claims, likewise supports approval.  Here, Class Members will receive damage payments automatically, without any proof of their damages. Most have already received their automatic reimbursement of the overcharges, and the compensation component—the second payment in an amount equal to the overcharge will likewise be applied to the Class Member's account or, at the Class Member's election, a check will be mailed upon approval. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781.  Because the relief is granted uniformly based on objective criteria and requires no action by Class Members, this factor supports approving the Settlement.

Third, the request for attorneys' fees and the timing of the request do not suggest that "counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. As outlined above, there is no sign that Class Counsel left any money or other relief on the negotiating table.  Instead, they have obtained automatic payments of overcharges

12

and compensatory damages in an equal amount. This relief remedies the very harm that led to this litigation in the first place and exceeds what any individual claimant could have accomplished.

Moreover, Class Counsel accomplished this relief without a stipulation regarding their fees. Instead, the parties discussed the attorneys' fee only after agreeing to the substance of the Settlement. Nor is the timing of the request such that the "attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Flint Water Cases*, 571 F. Supp. 3d at 782.  To the contrary, the parties agreed from the start that the fees would be paid separately from the relief provided by the Settlement such that the amount awarded will have no effect on the benefits provided to the Settlement Class.

### 4.    *The Settlement treats Class Members equitably relative to each other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members *equitably* relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated *equally*." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id*. (citation omitted).

The settlement here achieves this balance. Class Members will be compensated based on the amount of actual overcharge each incurred (without having to submit any confirmatory documentation). Each Class Member will compensation equal to twice their actual overcharge. Settlement Class Members will thus be put back in the position they would have been in but for

the overcharges and each Class Member will receive compensation proportional to the actual overcharge incurred, so the Settlement treats Class Members equitably relative to each other.

* * *

Because all the Rule 23(e)(2) factors confirm that the Settlement is fair, reasonable, and adequate, Plaintiff and Class Counsel respectfully request that the Court approve the Settlement.

### C.    The Requested Service Award Is Reasonable.

Plaintiffs further request—and ViaPath does not oppose—a modest award of $3,500 for each of their participation and service to the Class.  If approved, this award will have no impact on the amounts paid to Class Members, as ViaPath has agreed to pay the award separately from the Class compensation amounts.  This award is reasonable because Plaintiffs took an active role in this case. Incarcerated and formerly incarcerated individuals (and their friends and family) stuck their necks out for other class members and pursued the claims despite the uncertainty of how such litigation would be viewed in a closed prison environment and the embarrassing nature of labeling oneself as formerly incarcerated or friends and family of the incarcerated. Without the persistence of the Plaintiffs, Class Members likely would have received no meaningful compensation for the overcharges incurred due to the small amount of damages accruing to any one individual.

In comparable cases, this and other Courts have awarded similar—and often higher— amounts. *See Hengle v. Asner*, No. 3:19-cv-250, ECF No. 230 ¶¶ 21-22 (awarding $10,000 per named plaintiff); *Gibbs v. Stinson*, No. 3:18-cv-676, ECF No. 346 ¶ 20 (E.D. Va. Aug. 16, 2022) (awarding $20,000 service awards to each of the 13 class representatives); *Gibbs v. TCV, V, LLP*, No. 3:19-cv-789, ECF No. 95 (E.D. Va. Mar. 29, 2021) (approving a $7,500 service award); *Turner v. ZestFinance, Inc.*, No. 3:19-cv-293, ECF No. 114 (E.D. Va. July 9, 2020) (awarding $5,000 service awards to the 25 class representatives).  Plaintiffs' relatively modest request is

14

warranted here because they participated in the litigation and were vital to achieving this excellent result.  (Ex. 1, Fleu Decl. ¶¶ 31-33.)   If they were unwilling to step up or gave up at any point, none of this would have been possible.

      **D.**    **The Requested Attorneys' Fees and Costs Are Reasonable.**

Class Counsel seeks an award of $90,000 for their attorneys' fees and costs.  This request is the result of a negotiated stipulation between the parties, and ViaPath has agreed to pay this amount separately from the relief under the Settlement.  This fee is more than reasonable when considering the actual time and expense of Class Counsel in this case.

Here, the requested award includes both attorneys' fees and costs.  For fees, Class Counsel has incurred approximately $191,245.50 in attorneys' fees. (Ex. 1, Fleu Decl. ¶ 27; Ex. 2, Kelly Decl. ¶ 11). However, the law firms of Consumer Litigation Associates. P.C. and Kelly Guzzo, PLC have agreed their attorneys' fees of approximately $59,140.00, so that Mountain State Justice will receive the negotiated fee payment for their hard work on this case. Mountain State Justice's total lodestar is approximately $132,105.50[3]  (Ex. 1, Fleu Decl. ¶ 27.)[4]  Class Counsel has also incurred $1,185.62 in unreimbursed expenses.  (*Id.* ¶ 28; Kelly Decl. ¶ 12.)  These costs include filing fees, federal express, postage, travel expenses, research expenses, and copying charges. (*Id.*)  Class Counsel will also continue to accrue more time, as counsel is committed to complete all post-approval work, regardless of the actual time incurred.  In past comparable cases, Class Counsel's actual post-approval work has been significant, and Class Counsel has already had to respond to almost daily emails from Settlement Class Members, which will surely continue if the Settlement is approved.

---

[3] This figure is based solely on Mountain State Justice, Inc.'s incurred fees and costs. Co-counsel have agreed to waive fees in this action.
[4] Counsel's hourly rates are reasonable.  (Ex. 2, Kelly Decl. ¶¶ 10-13.)

The requested $90,000.00 for fees and costs represents a 0.68 multiplier for Mountain State Justice and is less than half of the actual hours that the attorneys working on this matter have incurred.  In other words, Class Counsel has agreed to a fee award that is less than the value of the total time and expenses incurred on this case.  This multiplier is well below the range approved in other settlements in both the Fourth Circuit and nationwide.[5]   Given the tremendous result achieved here, the requested fee is reasonable and appropriate.

## **CONCLUSION**

For all these reasons, Plaintiffs respectfully request that the Court grant this Motion for Final Approval of the Class Action Settlement, as well as their request for a reasonable service award and attorneys' fees and costs.

Respectfully submitted,
**PLAINTIFFS**

/s/ Kristi C. Kelly
Kristi C. Kelly VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone

---

[5] *See, e.g.*, *Skochin v. Genworth Financial, Inc.,* No. 3:19-cv-49, 2020 WL 6708388 (E.D. Va. Nov. 13, 2020) (finding 9.05 multiplier not unreasonable in lodestar cross-check analysis); *Spartanburg Reg'l Health Services District, Inc. v. Hillenbrand Industries, Inc.,* No. 7:03-cv-2141, 2006 WL 8446464 (D.S.C. Aug. 15, 2016) (approving fee award which resulted in multiplier above 6); *see also Lloyd v. Navy Federal Credit Union*, No. 3:17-cv-01280 (S.D. Cal. 2019) (approving fee which resulted in multiplier of 10.96); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-cv-04578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) (15.6 multiplier); *New Eng. Carpenters Health Benefits Fund v. First Databank*, No. 05-cv-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (8.3 multiplier); *In re Doral Financial Corp. Securities Litigation*, No. 05-cv-4014 (S.D.N.Y. Jul. 17, 2007) (10.26 multiplier); *Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.").

(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

Colten L. Fleu, (WVSB #12079)
Admitted *Pro Hac Vice*
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Phone: (304) 344-3144
Facsimile: (304) 344-3145
colten@msjlaw.org

Lydia C. Milnes (WVSB #10598)
Admitted *Pro Hac Vice*
Mountain State Justice, Inc.
1029 University Ave., Suite 101
Morgantown, WV 26505
Phone: (304) 326-0188
Facsimile: (304) 326-0189
lydia@msjlaw.org

Drew D. Sarrett (VSB No. 81658)
CONSUMER LITIGATION ASSOCIATES, P.C.
620 East Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 905-9900
Facsimile: (757) 930-3662
drew@clalegal.com
*Class Counsel*